**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DIANA JOHNSON,

Plaintiff,

vs.

THE OHIO CASUALTY INSURANCE COMPANY,

Defendant.

Case No. 1:05-cv-742

Magistrate Judge Timothy S. Black

**MEMORANDUM OPINION AND ORDER**

This civil action is before the Court on Defendant The Ohio Casualty Insurance Company's motion for summary judgment (Doc. 30) and the parties' responsive memoranda (Docs. 45, 51). The parties have consented to final adjudication by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 2.) For the reasons that follow, the Court **GRANTS** in part and **DENIES** in part Defendant's Motion for Summary Judgment.[1]

## I. BACKGROUND

Plaintiff Diana Johnson filed this lawsuit alleging employment discrimination against her former employer, Defendant The Ohio Casualty Insurance Company ("Ohio Casualty"), when it fired her after her she had worked for the company for 28 years.

---

[1] As explained *infra*, the Court denies Defendant's motion for summary judgment as to Plaintiff's federal law claim for age discrimination and her state law claims for age and gender discrimination, finding that these claims require trial by jury.

Plaintiff was employed by Ohio Casualty for 28 years. (Doc. 19, ¶ 8.) Ms. Johnson was originally hired by Defendant in February 1976 as a Rate Analyst. (Wolf Dep. Ex. 4, OCIC01152; Johnson Dep. 19-20.) Thirteen years later, in 1989, Ms. Johnson made a lateral move to the position of Technical Analyst. (*Id.*; Johnson Dep. 23-24, 26.) Nine years later, in 1998, Plaintiff applied for and was accepted into Defendant's in-house training for programming COBOL. Upon successful completion of the training, Defendant promoted Ms. Johnson to the position of Programmer in Defendant's automobile policy group. (Wolf Dep. Ex. 4, OCIC00152; Johnson Dep. 32-35, 38.)

In September 2000, Ms. Johnson earned another promotion, this time to the position of Software Engineer C. (Wolf Dep. Ex. 4, OCIC01152; Johnson Dep. 47-48.) Software Engineer Cs are the lowest-level Software Engineers, in comparison to Software Engineer Bs and As. Software Engineer Bs are mid-level, and Software Engineer As are the highest-level Software Engineers. (Waidmann Dep. 18; Binzer Dep. 12; Johnson Dep. Ex. 1.) Unlike Software Engineer Bs and As, a Software Engineer C "[g]enerally works under direct supervision and requires guidance throughout all phases of work." (Johnson Dep. Ex. 1.) All Software Engineer Cs require frequent mentoring. (Michaels Dep. 13-14; Waidmann Dep. 18-19; Binzer Dep. 56-58.) Such mentoring is neither remedial nor disciplinary. (*Id.*)

During 2002, Defendant began phasing out the legacy automobile computer system in favor of a new, more user friendly PARIS system. (Wolf Aff. 7; Johnson Dep.

62-68.) As a result, Defendant was transferring Software Engineers from the legacy automobile unit to other units throughout the I/S department. (*Id.*) Ms. Johnson requested transfer to the new rate maintenance unit, the payroll unit, or the print output unit. (Johnson Dep. 63-68.) However, Ms. Johnson's transfer request was never granted. (Wolf Dep Ex. 4, OCIC-1152.)[2]

In March 2004, Ohio Casualty gave Plaintiff a "marginal" performance evaluation for the 2003 year and counseled her on how she needed to improve her performance.[3] (Doc. 19 at ¶ 16.) As a result, Ms. Johnson's supervisors issued Ms. Johnson the first Corrective/Disciplinary Action of her 28-year tenure with the company, a "Formal Counseling." (Wolf Dep. Ex. 4, OCIC01152; Johnson Aff. at 3.) The Formal Counseling was issued solely as a result of Ms. Johnson's March 2004 overall "marginal" performance score for the year 2003. (Wolf Dep. 172-174, Ex.5, Ex. 7; Page Dep. 198, 200.) The "marginal" rating ascribed by Ms. Page and Ms. Wolf to Ms. Johnson's 2003 performance evaluation did not indicate unsatisfactory performance. (Wolf. Dep. 103, Ex. 5.) And Formal Counseling does not necessarily result from an overall "marginal" performance review. (Page Dep. 45.)

---

[2] In contrast, however, in 2002, Ohio Casualty transferred to the PARIS system a male Software Engineer, Scott Wahle, age 29, without his having completed his trial assignments (*see* Johnson Dep. 72-75, Ex. 1.), and, in 2004, Ohio Casualty transferred to the PARIS system Cindy Ratliff, age 39, a Software Engineer in the automobile unit (*see* Ratliff Dep. 9; Johnson Dep. 69, Ex. 1; Pl. Ex. C).

[3] The available overall scores for the yearly performance evaluations included "unsatisfactory," "marginal," "good," "exceeds expectations," and "clearly outstanding." (Page Dep. 44; Wolf Dep. Ex. 5.)

Ms. Johnson had never received less than a "Good" performance evaluation prior to her March 2004 review of the year 2003. (Johnson Aff. at 4.) For the year 2001, Ms. Johnson earned scores of "meets expectations," "effective," or "extremely effective" in every discrete area of performance. (Wolf Dep. Ex. 2.) Ms. Johnson's overall performance rating for the year 2001 was "Good Performance." (*Id.* at OCIC01862.) For the year 2002, Ms. Johnson earned ratings of "meets expectations" or "effective" in every discrete area of evaluation. (Wolf Dep. Ex. 3.) Ms. Johnson's overall performance rating for the year 2002 was "Good." (*Id.* at OCIC01875.)

In May 2004, Plaintiff was placed on probation. (Doc. 19 at ¶ 20.) On June 23, 2004, Ms. Craig and Ms. Wolf escalated Corrective Action and placed Ms. Johnson on "Probation-Level 1." (Wolf Dep. Ex. 4; Johnson Dep. Ex. 7.) This constituted only the second disciplinary action Ms. Johnson had ever received during her 28 years of employment. (*Id.*; Johnson Aff. at 6.) Approximately three months later, on September 29, 2004, Ms. Page and Ms. Wolf terminated Ms. Johnson's employment, asserting "Unsatisfactory Performance." (Wolf. Dep. Ex. 20.; Doc 19 at ¶ 21.)

On January 29, 2005, Plaintiff filed a complaint with the EEOC, alleging age discrimination in employment against Defendant. (*Id.* at ¶ 4.) Subsequently, on November 18, 2005, Plaintiff filed the instant civil action.

## II. PROCEDURAL HISTORY

Plaintiff filed her initial complaint *pro se* on November 18, 2005 (Doc. 1), asserting the following claims: (1) age discrimination in violation of the Age Discrimination in Employment Act, under 29 U.S.C § 623 *et seq*. (Count I); (2) age discrimination under Ohio Rev. Code §§ 4112.14 and 4112.99 (Count II); and (3) wrongful discharge under Ohio public policy (Count III).

On October 2, 2006, with the assistance of newly-retained counsel, Plaintiff filed an Amended Complaint (Doc. 19) adding claims for: (1) disability discrimination under Ohio Rev. Code § 4112.02 (Count IV); (2) violation of FMLA under 29 U.S.C. § 2615(a)(1) (Count V); (3) FMLA retaliation under 29 U.S.C. § 2615(a)(2) (Count VI); (4) violation of ERISA under 29 U.S.C. § 1001, *et seq*. (Count VII) and; (5) gender discrimination under Ohio Rev. Code § 4112.02 (Count VIII).

On October 10, 2007, Defendant filed a motion for summary judgment (Doc. 30) seeking dismissal of Plaintiff's claims on the basis that there was nothing unlawful about Plaintiff's termination. Plaintiff has responded to the motion for summary judgment (Doc. 45), and Defendant has filed its reply memorandum (Doc. 51). The matter is, therefore, ripe for review.

## III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 106 S. Ct. 2505 (1986).

## IV. ANALYSIS

Plaintiff does not oppose summary judgment on her claims for: (1) wrongful discharge in violation of Ohio public policy (Count III); (2) disability discrimination under Ohio Rev. Code § 4112.02 (Count IV); (3) violation of FMLA under 29 U.S.C. § 2615(a)(1) (Count V); (4) FMLA retaliation under 29 U.S.C. § 2615(a)(1) (Count VI); and (5) ERISA under 29 U.S.C. §1001, *et seq*. (Count VII). Therefore, the Court will not address these claims in its analysis but for to note that Plaintiff accedes to entry of summary judgment against these claims and that Defendant has established that it is entitled to summary judgment on these claims. (*See* Doc. 45, p. 1; Doc. 30 at pp. 26-30.)

The analysis that is required here is whether or not Plaintiff can survive entry of summary judgment against her federal claim for age discrimination and her state law claims for age and gender discrimination.

### A. Age Discrimination Claim Under 29 U.S.C. §§ 623, *et seq.*

The Age Discrimination in Employment Act ("ADEA") prohibits discrimination in employment, on the basis of age. 29 U.S.C. § 623(a).[4] A plaintiff may set forth a *prima facie* showing, in the ADEA context, by demonstrating that: (1) she was a member of the protected class; (2) she was qualified for the job she held; (3) she suffered an adverse employment action; and (4) that she was treated differently than similarly situated younger and/or male employees. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 310 (1996); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998).[5]

Once a plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employee's adverse employment action. *Logan v. Denny's, Inc.*, 259 F.3d 558, 567 (6th Cir. 2001) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802). If the defendant carries this burden, the plaintiff must then "prove that the proffered reason was actually a pretext for invidious discrimination." *(Id.)*

Defendant asserts that Plaintiff cannot establish the second and fourth prongs of her *prima facie* case. (Doc. 30, at pp.17-22.) Accordingly, the Court will focus its

---

[4] Federal law also prohibits discrimination in employment on the basis of gender. *See* 42 U.S.C. § 2000e, *et seq*. ("Title VII").

[5] Claims based on gender discrimination under Title VII are also analyzed under the same framework. *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 538 (6th Cir. 2002) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)).

analysis on two inquiries: (1) whether Plaintiff was qualified for the job she held; and (2) whether Plaintiff was treated differently than similarly situated younger and/or male employees.[6]

*1. Was Plaintiff Qualified For Her Position?*

Defendant first argues that to meet the qualification requirement, Plaintiff must show that she was performing at a level that met Defendant's legitimate expectations at the time of her dismissal. (Doc. 30.) Defendant contends that for several years before her termination, Plaintiff was counseled and warned about deficiencies in her job performance, evidence that she was not qualified for her position. (*Id.*)

The *prima facie* burden of showing that a plaintiff is qualified can be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575-76 (6th Cir. 2003). A qualified individual must perform "at a level which met his employer's legitimate expectations." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990).[7]

A court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the *prima facie* case. *Cline v.*

---

[6] Plaintiff brings claims for age discrimination and for gender discrimination. While the former is brought under federal law, and the latter is brought under state law, the legal framework and analysis is the same. *See* note 5, *supra*.

[7] Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills. *Wexler*, 317 F.3d at 575-76.

*Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 1999); *Wexler*, 317 F.3d at 575-76. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination. *Wexler*, 317 F.3d at 574; *Cline*, 206 F.3d at 660-61. Instead, courts must analyze the qualifications of the plaintiff *independent* of the defendant's nondiscriminatory reason for termination. *Wexler*, 317 F.3d at 574-75; *Cline*, 206 F.3d at 660-61.

The deficiencies in Plaintiff's job performace are the same reasons given by Defendant for terminating her, and, therefore, cannot be considered in determining whether she was qualified for her position. *Cline*, 206 F.3d at 660-61 ("when assessing whether a plaintiff has met [his] employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff.") The only relevant inquiry at the *prima facie* stage of the analysis is whether the employee was *objectively qualified* for the position. *Wexler*, 317 F.3d at 575-76.

In a recent case, the Sixth Circuit explicitly stated that "[f]or purposes of the prima facie case analysis, a plaintiff's qualifications are to be assessed in terms of whether he or she was meeting the employer's expectations *prior to and independent of the events that led to the adverse action.*" *Tysinger v. Zanesville Police Dep't*, 463 F.3d 569, 573 (6th Cir. 2006) (emphasis added). As the *prima facie* case is not intended to be burdensome,

detailed analysis at this stage on whether a plaintiff is "qualified" is improper. *McCrory v. Kraft Food Ingredients,* No. 94-6505, 1996 U.S. App. LEXIS 26305 *14 (6th Cir. Oct. 3, 1996).

Plaintiff's 28-year tenure at Ohio Casualty is telling with regard to whether or not she was objectively qualified for the position. In *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 372 (6th Cir. 1999), the Sixth Circuit considered the fact that the plaintiff worked satisfactorily for years and that "the plaintiff would not have been given significant responsibility . . . if his performance had been unacceptable." Similarly, in the instant case, Plaintiff was employed by Ohio Casualty for 28 years and was never disciplined until six and a half months prior to her termination. (Wolf Dep. Ex. 20, Ex. 4.)

Drawing all reasonable inferences in favor of Plaintiff, the Court finds in the summary judgment context that Plaintiff has proffered sufficient evidence that she was qualified for her position based on her many years of experience with the company, her promotion to the position of Software Engineer C, her lack of a disciplinary record, and the admission by her former manager and team leader that she did not do anything that "should have caused termination." (Waidmann Dep. 78-79.)

2. *Was Plaintiff Treated Differently Than Similarly Situated Employees*?

Defendant next argues that Plaintiff cannot establish the fourth prong of a *prima facie* case for age discrimination. (Doc. 30.) Defendant contends that Plaintiff cannot

show that "a similiarly-situated male employee or significantly younger employee was treated more favorably." (*Id.*)

To make a comparison of Plaintiff's treatment to that of younger and/or male employees, Johnson must show that she and the comparator employees are "similarly situated in all *relevant* respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (emphasis added). A plaintiff satisfies the fourth prong where he or she demonstrates that a "comparable non-protected person was treated better." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992). The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994).

In *Barnes v. City of Cincinnati*, 401 F.3d 729, 737 (6th Cir. 2005), the Sixth Circuit rejected the defendant's claim that the plaintiff failed to identify a similarly situated individual noting that "inflexible criteria for establishing the similarly-situated requirement would mean that 'a plaintiff whose job responsibilities are unique to his or her position will never successfully establish a *prima facie* case.'" (*Id.*) (citing *Ercegovich*, 154 F.3d at 353). "If the non-protected employee to whom the plaintiff compares himself or herself must be identically situated to the plaintiff in every single aspect of their employment, a plaintiff whose job responsibilities are unique to his or her position will *never* successfully establish a prima facie case (absent direct evidence of discrimination)." *Ercegovich*, 154 F.3d at 353.

Ms. Johnson proffered evidence of four comparators (C. Scott Wahle, male, age 29; Cindy Ratliff, female, age 39; Doug Gates, male; and Dustin Davenport, male, age 33), from which a reasonable jury could conclude that younger and/or male Software Engineers received more favorable treatment when it came to tolerating and/or overlooking performance and software testing problems.[8] (Doc. 45.) A jury could also reasonably conclude that Plaintiff was similarly situated to employees Wahle, Ratliff, Gates and Davenport, based on the fact that they were all Software Engineers and two of the employees held the same title as Plaintiff, Software Engineer C. (*Id.*) The Court is

---

[8] For example:

C. Scott Wahle: During the period Defendant was disciplining Plaintiff for alleged poor testing, Plaintiff was tasked with fixing programming errors committed by Mr. Wahle in the automobile system that had already gone into production. (Johnson Dep. Ex. 2, 000004; Johnson Dep. at 87.)

Cindy Ratliff: During the period Defendant was disciplining Plaintiff for alleged poor testing, Plaintiff was tasked with fixing programming errors committed by Ms. Ratliff in the automobile system, in at least two programs that had already gone into production. (Johnson Dep. Ex. 2, 000004; Johnson Dep. At 85-87.)

Doug Gates: Mr. Gates had the same issue arise in claims for which Plaintiff was disciplined and that Defendant asserts motivated its decision to terminate her, but he was not disciplined. (Sanders Aff. at 11.)

Dustin Davenport: Mr. Davenport was promoted to Software Engineer B despite Betty Sanders's solicited opinion that he was not qualified for promotion because he required too much guidance during the testing phases of the project and had difficulty retaining information pertinent to testing. (Sanders Aff. At 22; Pl. Ex. D.)

The Court is also compelled by the statement of Betty Sanders, Ms. Johnson's colleague and on certain projects, mentor, that "[a] Software Engineer would not expect to receive discipline of any sort for such matters as those described [as the cause for Ms. Johnson's termination]. The fact that Ms. Johnson was disciplined and terminated for such matters leads me to believe that she was being unfairly targeted and set up for termination." (Doc. 55, ¶ 21.)

not persuaded by Defendant's argument that these employees were not similarly situated to Plaintiff due to their past performance records, different supervisors, or alternate units. (Doc. 51, p. 13.)

The parties have presented conflicting evidence as to whether Plaintiff can show that a similarly situated male employee or younger employee was treated more favorably. Drawing all reasonable inferences in favor of Plaintiff, the Court finds in the summary judgment context that Plaintiff has proffered sufficient evidence to raise genuine issues of material fact precluding entry of summary judgment

*3. Pretext*

Even if Plaintiff establishes a *prima facie* case of age (or gender) discrimination, Defendant claims that she fails to show that the Defendant's non-discriminatory reason for disciplining and firing her -- poor work performance -- was pretext for discrimination. (Doc. 30.)

To establish pretext, a plaintiff must demonstrate "that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir. 2000). The first type of proof requires that Johnson show that the basis for the termination never happened or is factually false. *(Id.)* The second type of proof consists of a demonstration that "an illegal motivation was more likely than [the reasons] offered by the defendant." *(Id.)* The third type of proof consists of evidence that

other younger and/or male employees or employees who were otherwise similarly situated to Johnson were not terminated. (*Id.*)

Plaintiff presents evidence from which a reasonable jury could conclude that Defendant's articulated reasons for her termination either had no basis in fact, or did not motivate Defendant's decision. (Doc. 45.) Specifically, Plaintiff presents evidence of her promotion to Software Engineer C and over 25 years of service without a disciplinary record. (*Id.*) Additionally, she presents evidence that her weekly meetings and mentoring sessions were not disciplinary and evidence that the poor performance reviews she received were not warranted. (*Id.*)

In assessing the third type of proof, Plaintiff points to the four comparators who were treated more favorably than she was. (Doc. 45.) Specifically, Johnson presents evidence that several younger and/or male employees were retained despite similar performance problems for which she was terminated. (*Id.*) The retention of these employees thus undermines the explanation that Plaintiff's performance issues were the cause of her termination. This is an inference that must be drawn at summary judgment in favor of the non-movant. Such facts, in combination with the evidence produced by Plaintiff, establish genuine issues of material fact as to whether or not Defendant's stated reasons for termination have a sustainable basis in fact, or did or did not motivate Defendant's decision, or were or were not insufficient to warrant the termination (considering how similarly situated persons were treated).

Defendant argues further that Plaintiff cannot show that Ohio Casualty's business reason for terminating Plaintiff was a mere pretext for age or gender discrimination. (Doc. 30.) An employer's business judgment, however, is not an absolute defense to unlawful discrimination. *E.E.O.C. v. Yenkin-Majestic Paint Corp.*, 112 F.3d 831, 835 (6th Cir. 1997) ("Although it is true that a factfinder should refrain from probing an employer's business judgment, a decision to terminate an employee based upon unlawful considerations does not become legitimate because it can be characterized as a business decision."). The Sixth Circuit has held that the reasonableness of an employer's decision may be considered to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation. *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998).

In *Singfield v. Akron Metro. Hous. Auth.*, the Sixth Circuit noted that "[c]ourts have recognized that in discrimination and retaliation cases, an employer's true motivations are particularly difficult to ascertain." 389 F.3d 555, 564 (citing *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S. Ct. 1478 (1983) (acknowledging that discrimination cases present difficult issues for the trier of fact, as "[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes")). The Court in *Singfield* further stated that such factual determinations are frequently inappropriate for summary judgment. *(Id.)* (citing *Lowe v. City of Monrovia,* 775 F.2d 998, 1009 (9th Cir. 1985) (stating that very little additional evidence is required to raise a genuine issue of

fact regarding motive, and concluding that summary judgment on the merits is ordinarily inappropriate once a *prima facie* case has been established)).

Here, the conflicting proof and the inferences that can be drawn therefrom raise genuine issues of material fact that preclude the granting of summary judgment. That is, the facts and inferences presented by Defendant do not diminish the contrary evidence to the point that "it is so one-sided that [Defendant] must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505 (1986).

**B. State Law Claims**

Having addressed Plaintiff's federal age discrimination claim, the Court turns to Plaintiff's state law claims under Ohio's age and gender discrimination laws. Ohio Rev. Code.§ 4112 *et seq*. Under Ohio law, the elements and burden of proof in age and gender discrimination claims parallel the federal law analysis. *McLaurin v. Fischer*, 768 F.2d 98, 105 (6th Cir. 1985) (citing *Barker v. Scovill, Inc.*, 6 Ohio St. 3d 146, 147, 451 N.E.2d 807 (1983)); *Ohio Civil Rights Comm'n v. Ingram*, 69 Ohio St.3d 89, 92, 630 N.E.2d 669 (1994) (Ohio courts apply federal law on state discrimination claims). This Court therefore applies the foregoing analysis to Plaintiff's state law claims, and the Court concludes that Plaintiff states *prima facie* claims for Ohio law claims for age and gender discrimination, and that Plaintiff has presented sufficient facts to require a trial by jury as to whether or not Defendant's proffered reason for terminating her employment was a pretext for age and/or gender discrimination.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** in part and **DENIES** in part Defendant Ohio Casualty's motion for summary judgment (Doc. 30). The Court **DENIES** Defendant's motion for summary judgment as to Plaintiff's claims for: (1) age discrimination under 29 U.S.C. §§ 623, *et seq*.; and (2) age and gender discrimination under Ohio Rev. Code §§ 4114 and 4112.99. The Court **GRANTS** Defendant's motion for summary judgment as to all remaining claims (Counts III, IV, V, VI, and VII).

**IT IS SO ORDERED.**

Date: 6/11/08

Timothy S. Black
Timothy S. Black
United States Magistrate Judge